IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARKELUS Q. CARTER, | ) | CASE NO. 3:12 CV 1378 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| JOHN COLEMAN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me by referral[1] is the *pro se* petition of Markelus Q. Carter for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Carter is presently under APA supervision following his release on January 10, 2014.[3] He served a four-year prison sentence imposed in 2010 by the Allen County Court of Common Pleas following his conviction by a jury of two offenses.[4] Carter here raises one ground for relief.[5] The State, in its return of the writ, argues that writ should be denied on the merits because the state courts correctly identified and reasonably

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge John R. Adams in a non-document order dated June 28, 2012.

[2] ECF # 1.

[3] Information from a current search of the website of the Ohio Department of Rehabilitation and Correction http://www.drc.ohio.gov/OffenderSearch/details.aspx?id=A618999&pg=x.

[4] ECF # 9, Attachment (state court record) at 1. The offenses for which Carter was convicted are having weapons while under disability and possession of crack cocaine.

[5] ECF # 1 at 3.

applied federal precedent to the case facts and the state court decisions are not contrary to, or unreasonable applications of, clearly established federal law.[6] Carter has filed a traverse, arguing that the facts in the return of the writ were misleading and further denying the allegations set forth.[7]

For the reasons stated below, I will recommend that the petition be denied on the merits.

## Facts

### A.    Background facts, trial, and sentence

The relevant background facts as found by the Ohio appeals court[8] are straightforward. In February 2009 the Lima Police began to investigate the death of Kenneth Warrington, the boyfriend of Sonya Burkholder (the mother of Carter's children).[9] Carter was a person of interest in the case, and the police called him to come to the station.[10] When Carter did not arrive, the police broadcast a description of Carter's vehicle.[11] Upon

---

[6] ECF # 9 at 22.

[7] ECF # 14 at 2-4.

[8] Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[9] ECF # 9, Attachment at 7.

[10] *Id.*

[11] *Id.*

approaching Carter's home, a police officer noticed that Carter's front license plate was different than the rear license plate.[12] When Carter drove away the police stopped the vehicle, informed Carter that he was not under arrest but that they needed to talk with him about a homicide, at which point Carter became "extremely emotional" and started screaming about his daughter.[13] The officers assured him several times that his daughter was fine, but because of his continued emotional state, the police drove him to the police station.[14] The police then impounded his car, which blocked a nearby driveway.[15] Carter was not handcuffed when he arrived at the station, and the Sergeant believed he was there of his own volition.[16]

The police furthered testified that Carter was brought in for a "non-custodial" interview about the homicide, meaning that he was not under arrest and was free to go.[17] The interview lasted approximately two hours, during which Carter was calm, with the exception of the last few minutes.[18] Furthermore, during the interview the door was not locked and Carter had access to his cell phone (which he used several times, one of which he used to call

---

[12] *Id.* at 8.

[13] *Id.*

[14] *Id.* at 9.

[15] *Id.*

[16] *Id.* at 8.

[17] *Id.* at 9.

[18] *Id.*

for a ride[19] and another to speak with his attorney).[20] The police informed Carter that he could leave "when we're done."[21]

Carter's attorney (Rexford) testified that he spoke with Carter during the interrogation, told him about his rights, and indicated to the detectives to "cease all communications."[22] Rexford also stated that he believed that he was either misled that Carter was there voluntarily and free to go, or the officers he spoke to were misinformed about why Carter was brought to the station.[23]

During the interview Carter admitted that he kept a firearm in his home.[24] It was this statement – admitting to possessing a firearm despite being under disability from a prior conviction – that the police used as a basis for a search warrant of Carter's home.[25]

---

[19] *Id.* at 10.

[20] *Id.* at 9.

[21] *Id.* at 10.

[22] *Id* at 12.

[23] *Id.*

[24] *Id.* at 10.

[25] *Id.* at 11.

Carter testified that he believed the officers had abused him mentally because they did not give him a straight answer about his daughter.[26] But he admitted that at no point did any officer inform him that his daughter had been injured.[27]

Based on his impressions of the interview as "custodial" and arguing that it, therefore, required the police to advise him of his Miranda rights, which they did not do, Carter moved to suppress.[28] The trial court found the stop of Carter's vehicle lawful because of the two different licenses and additionally that the officers reasonably stopped Carter as a potential witness of a crime.[29] The trial court further held that Carter went voluntarily to the police station, and while he was never officially advised of his Miranda rights, his attorney did advise him of such over the phone during the interrogation.[30] The court reasoned that because he was not threatened or promised anything for his statement, and because he had the opportunity to consult with his attorney, he was never in custody and, therefore, Miranda warnings were not required.[31] The court concluded that the search warrant for Carter's home

---

[26] *Id.* at 13.

[27] *Id.* at 14.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

was not based on illegally obtained evidence and thus overruled Carter's motion to suppress.[32]

Following a trial, a jury found Carter guilty of (Count One) having a weapon while under disability and (Count Three) possession of crack cocaine.[33] On December 16, 2009, a trial court sentenced Carter to a one-year prison term for Count One and a mandatory three-year prison term on Count Three, to be served consecutively.[34]

### B.    Direct appeals

### 1.    *Court of appeals*

On January 8, 2010, Carter, represented by new counsel, filed a timely[35] notice of appeal.[36] In his brief, Carter, through counsel, asserted the following assignment of error:

> 1.    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT SUPPRESS MR. CARTER'S NON-MIRANDIZED STATEMENTS AND THE FRUITS THEREOF, DESPITE THE FACT THAT MR. CARTER WAS QUESTIONED BY MULTIPLE POLICE OFFICERS IN AN INTERROGATION ROOM, WAS TOLD THAT HE COULD LEAVE AFTER THE POLICE WERE DONE QUESTIONING HIM, AND HE HAD NO WAY TO LEAVE

---

[32] *Id.* at 15.

[33] *Id.*

[34] *Id.*

[35] Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within thirty days of the judgment being appealed. *See also*, *Smith v. Konteh*, No. 3:04CV7456, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007).

[36] ECF # 1 (petition) at 14. Carter's counsel at trial was F. Stephen Chamberlain and on appeal was Spencer Cahoon.

> EARLIER SINCE THE POLICE HAD IMPOUNDED HIS VEHICLE AND TAKEN HIS KEYS.[37]

The State responded.[38] The court of appeals on October 25, 2010, affirmed Carter's convictions and sentences.[39]

## 2. *Supreme Court of Ohio*

Carter, through counsel,[40] timely filed an appeal in the Ohio Supreme Court. Carter raised this proposition of law:

> 1. WHEN THE POLICE ARREST AN INDIVIDUAL, THE POLICE MAY NOT REMOVE THE TAINT OF THAT ARREST BY PROVIDING THE INDIVIDUAL WITH MISLEADING INFORMATION. INSTEAD, THE POLICE MUST PROVIDE THE INDIVIDUAL WITH THE MIRANDA WARNINGS PRIOR TO INTERROGATION. IF THE MIRANDA WARNINGS ARE NOT GIVEN, ALL STATEMENTS AND EVIDENCE OBTAINED AS A RESULT OF THE CONSTITUTIONAL VIOLATIONS MUST BE SUPPRESSED. SECTIONS 10 AND 14, ARTICLE 1, OF THE OHIO CONSTITUTION; FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.[41]

---

[37] ECF # 9, Attachment at 94.

[38] *Id.* at 93.

[39] *Id.* at 21.

[40] Carter was represented by E. Kelly Mihocik from the Office of the Ohio Public Defender.

[41] ECF # 1 at 4.

The State did not file a response. On March 2, 2011, the Ohio Supreme Court denied Carter leave to appeal and dismissed the appeal as not involving any substantial constitutional question.[42] Carter did not seek a writ of certiorari from the United States Supreme Court.[43]

### 3.   *Post-conviction petition to vacate or set aside the judgment of conviction or sentence*

During the time while his direct appeal was still pending, on September 23, 2010, Carter timely filed in the trial court a *pro se* petition to vacate or set aside the judgment of conviction or sentence. Carter raised these errors in his petition.

1.   VIOLATION OF 6TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

Trial counsel failed to adequately prepare for jury trial, by failing to investigate exculpatory evidence, secure full and fair discovery, and to interview and subpoena defense witnesses critical toward Defendant Carter's actual innocence theory of defense.[44]

2.   VIOLATION OF 6TH AND 14TH AMENDMENTS DUE PROCESS RIGHT TO FULL AND FAIR DISCOVERY UNDER <u>BRADY</u> AND INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

State failed to provide full and fair discovery, including exculpatory evidence of files and records located on illegal search and seizure confiscated personal computers that policy agency refused to disclose or ultimately return to Defendant Carter even having been given an order by the trial court in this above-styled case. Where trial counsel failed to secure exculpatory evidence by failing to compel State to

---

[42] ECF # 9, Attachment at 130.

[43] ECF # 1, at 4.

[44] ECF # 9, Attachment at 132.

produce the evidence amounted to ineffective assistance denying a fair trial.[45]

The State responded by filing a memorandum in opposition to Carter's petition.[46] On October 21, 2010, the trial court denied the petition to vacate because Carter's claims were barred by *res judicata*, and Carter failed to meet his burden to submit evidentiary documentary.[47] Then, on November 1, 2010, Carter filed a *pro se* motion for reconsideration and motion to strike State's memorandum in opposition,[48] and the court denied both.[49] Then, on November 22, 2010, Carter timely filed a *pro se* notice of appeal of the court's denial of his post-conviction relief petition to vacate.[50] Carter raised this error assignment in his merit appellate brief:

1.    APPELLANT CARTER WAS DENIED DUE PROCESS OF LAW UNDER THE UNITED STATES AND OHIO CONSTITUTIONS, WHERE THE TRIAL COURT SUMMARILY DISMISSED HIS POST CONVICTION RELIEF PETITION WITHOUT CONDUCTING AN EVIDENTIARY HEARING.[51]

---

[45] *Id.* at 133.

[46] *Id.* at 138.

[47] *Id.* at 182.

[48] *Id.* at 188.

[49] *Id.* at 192.

[50] *Id.* at 193.

[51] *Id.* at 195.

The State (the appellee) then filed an oppositional appellate brief.[52] The appellate court overruled Carter's assignment of error and affirmed the judgment of the trial court.[53] Carter filed a *pro se* motion for reconsideration in the appellate court on July 18, 2011,[54] and a second motion for reconsideration[55] and motion to certify conflict on August 17, 2011.[56] Ohio's Third District Court of Appeals denied Carter's motion for reconsideration[57] and the motion to certify conflict.[58]

Carter, *pro se*, filed an appeal in the Ohio Supreme Court and raised three assignments of error in his jurisdictional memorandum:

1.  WHETHER APPELLANT WAS DENIED DUE PROCESS OF LAW UNDER THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION, WHERE THE TRIAL COURT SUMMARILY DISMISSED HIS POST CONVICTION RELIEF PETITION WITHOUT CONDUCTING AN EVIDENTIARY HEARING.[59]

2.  WHETHER THE TRIAL COURT ERRED IN SUMMARILY DISMISSING APPELLANT'S POST CONVICTION RELIEF PETITION ABSENT CONDUCTING AN EVIDENTIARY HEARING WITHOUT ORDERING THE COURT REPORTER'S

---

[52] *Id.* at 214.

[53] *Id.* at 227.

[54] *Id.* at 228.

[55] *Id.* at 231.

[56] *Id.* at 234.

[57] *Id.* at 236.

[58] *Id.* at 237.

[59] *Id.* at 243.

-10-

> TRANSCRIPT AND THEREBY INSPECTING THE FILES AND RECORDS OR THE CASE PURSUANT TO R.C. 2953.21(C).[60]
>
> 3.    WHETHER THE TRIAL COURT ERRED IN FAILING TO ADDRESS APPELLANT'S MOTION TO DISQUALIFY THE STATE FOR ITS FAILURE TO FILE A TIMELY OPPOSITION PURSUANT TO R.C. 2953.21(D).[61]

The State did not respond. On November 30, 2011, upon consideration of the jurisdictional memoranda, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed Carter's appeal as not involving any substantial constitutional question.[62]

## 4.    *Application to reopen direct appeal*

On January 21, 2011, under Ohio Appellate Rule 26(b), Carter filed an untimely *pro se* application to reopen his direct appeal using an ineffective assistance of appellate counsel claim. Carter alleged that his appellate counsel was ineffective for not raising these errors on direct appeal:

> 1.    FAILURE OF TRIAL COUNSEL TO ADEQUATELY PREPARE AND ADJUDICATE PRETRIAL SUPPRESSION HEARING BY FAILING TO SUBPOENA EXCULPATORY DEFENSE WITNESSES.
>
> 2.    FAILURE OF TRIAL COUNSEL TO PURSUE FULL AND FAIR DISCOVERY UNDER CRIMINAL RULE 16.
>
> 3.    FAILURE TO SUBPOENA DEFENSE WITNESSES WHOSE TESTIMONY WENT DIRECTLY TOWARD DEFENDANT'S ACTUAL INNOCENCE.

---

[60] *Id.*

[61] *Id.* at 244.

[62] *Id.* at 248.

4.    FAILURE OF TRIAL COUNSEL TO MOVE FOR MENTAL COMPETENCY DETERMINATION UNDER R.C. §2945.371(J).[63]

The State did not respond. On March 9, 2011, Ohio's Third District Court of Appeals found that the additional assignments of error raised by Carter fail to show any genuine issue as to whether he was deprived of the effective assistance of counsel on appeal, thus they denied Carter's application to reopen his direct appeal.[64]

On April 22, 2011, Carter appealed the denial of his application to reopen to the Ohio Supreme Court.[65] Carter raised this assignment of error in his jurisdictional memorandum:

1.    APPELLANT CARTER WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF LAW, AS GUARANTEED BY THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION, WHERE HE WAS DENIED THE PROTECTED LIBERTY INTEREST OF ADEQUATE ADJUDICATION UNDER RULE 26(B) OF THE OHIO RULES OF APPELLATE PROCEDURE.[66]

The State did not respond. On July 6, 2011, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.[67]

---

[63] ECF # 9 at 12.

[64] ECF # 9, Attachment at 251.

[65] *Id.* at 254.

[66] *Id.* at 259.

[67] *Id.* at 265.

## 5.    *Federal habeas petition*

Carter, *pro se*, then timely filed[68] the present petition for habeas relief. The petition

raises the following ground for relief.

> **Ground One**: Custodial interrogation triggering Miranda warning.

> **Supporting Facts**: After being stopped in my car by police at gun point and search, I was taken to the police station against my will after the police made me believe my daughter had been killed. They never allowed me to leave until they were done questioning me, and never once did they say I had the right to leave. They then made it clear that I couldn't leave by placing me in the back corner of the interrogation room and blocking me from the door, with two armed detectives in this small room, they severed my right to my attorney when they did not reveal the truth to him that the situation was not about my daughter and told him that's what I was there for, I was never given Miranda rights or allowed to leave until they let me.[69]

The State then filed a return of writ,[70] to which Carter filed a traverse.[71]


# Analysis

## A.    **Preliminary observations**

1.    There is no dispute that Carter was in state custody as a result of his conviction and sentence by an Ohio Court, at the time he filed this petition. Thus, Carter meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[72]

---

[68] The present petition was filed on June 1, 2012. ECF # 1.

[69] ECF # 1 at 6.

[70] ECF # 9.

[71] ECF # 14.

[72] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

-13-

2. There is also no dispute, as detailed earlier, that the petition here was timely filed under the applicable statute.[73]

3. In addition, Carter states,[74] and my own review of the docket in this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[75]

4. Moreover, this claim has been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[76]

5. Finally, Carter requested appointment of counsel[77] but this motion was denied.[78] Carter did not request an evidentiary hearing to develop the factual bases of his claims.[79]

## B. Standard of review – AEDPA review

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute provides that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly

---

[73] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[74] ECF # 1 at 13.

[75] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F. 3d 699, 704 (6th Cir.2006).

[76] 28 U.S.C. § 2254(b); *Rhine v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[77] ECF # 12.

[78] ECF # 13.

[79] 28 U.S.C. § 2254(e)(2).

-14-

established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[80]

In applying that statute, the well-known teachings of *Williams v. Taylor* guide the federal habeas court.[81] As stated by the United States Supreme Court in *Williams*, a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[82] *Williams* further holds that a state court decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[83]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law

---

[80] 28 U.S.C. § 2254(d).

[81] *Williams v. Taylor*, 529 U.S. 362 (2000).

[82] *Id.* at 412. *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[83] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

erroneously or incorrectly."[84] Rather, the federal habeas court may disturb the state court holding only upon showing that it was "objectively unreasonable."[85]

The Supreme Court teaches that this "objectively unreasonable" standard is "difficult to meet,"[86] and "highly deferential" to the decision of the state court.[87] As the Supreme Court explained, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[88] Or, stated differently, a writ will issue only upon a showing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[89]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[90]

---

[84] *Williams*, 529 U.S. at 411.

[85] *Id*. at 409.

[86] *Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770, 786 (2011).

[87] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[88] *Richter*, 131 S. Ct. at 786.

[89] *Id.* at 786-87.

[90] *Williams*, 529 U.S. at 405-07. *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

-16-

As the Supreme Court observed in *Harrington v. Richter*, a state court need not state its reasons or explain its conclusion when it adjudicates a federal claim on the merits.[91] When a criminal defendant presents a federal claim to the state court, which then denies it without any statement of reasons or explanation for the decision, "it may be presumed that the state court adjudicated the [federal] claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[92] In such circumstances, the federal habeas court must give deference to the decision of the state court.[93]

## C.     Application of standard

The State maintains that Ground One, which was addressed by the Ohio appeals courts, should be dismissed on the merits after AEDPA review. The state court decision deserves deference under 28 U.S.C. § 2254(e). The appellate court correctly identified and reasonably applied federal law to the case facts, and the decision was not contrary to, nor an unreasonable application of, clearly established federal law.

The law at issue in this case begins with *Miranda v. Arizona*. *Miranda* requires that a suspect at a custodial interrogation, due to the coercive nature of custodial interrogations, must be warned of certain rights.[94] The Ohio appeals court made clear that it is

---

[91] *Richter*, 131 S. Ct. at 784-85.

[92] *Id.*; *Brown v. Bobby*, 656 F.3d 325, 328-29 (6th Cir. 2011).

[93] *Brown*, 656 F.3d at 329.

[94] A suspect must be warned that he may remain silent, that anything he says may be used against him, that he has a right to an attorney, and that one will be appointed for him if he cannot afford to pay. *Miranda v. Arizona*, 384 U.S. 436 (1966).

well-established that Miranda warnings are not required in non-threatening and non-confining interrogation situations, which are non-custodial in nature.[95] *Miranda* defines the nature of a 'custodial' interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way."[96] This is further dependent on whether the suspect is formally under arrest or if the subject's movement is restrained to the degree that it is the equivalent of an arrest.[97]

Further, when deciding if an interrogation was custodial, courts look at "how a reasonable man in the suspect's position would have understood his situation."[98] The Supreme Court of Ohio instructs that, "[i]n judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.'"[99] The Sixth Circuit uses a totality of the circumstances approach as well, looking at the "objective circumstances of the interrogation," rather than "the subjective views harbored by either the interrogating officers or the person being questioned."[100]

---

[95] ECF # 9 at 19; *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977).

[96] *Miranda*, 384 U.S. at 444.

[97] *California v. Beheler*, 463 U.S.1121, 1127 (1983).

[98] *State v. Mason*, 82 Ohio St. 3d 144, 154, 694 N.E.2d 932, 946 (1998) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)).

[99] *State v. Gumm*, 73 Ohio St. 3d 413, 429, 653 N.E.2d 253, 268 (1995) (quoting *U.S. v. Mendenhall*, 446 U.S. 544, 554 (1980)).

[100] *Stansbury v. California*, 511 U.S. 318, 323 (1994); *Mason*, 320 F.3d at 631.

-18-

The Ohio appeals court followed the precedent set forth above and denied Carter's claim. The court did not find Carter's argument that he was not free to leave persuasive. They noted that he had possession of his cell phone and did, in fact, contact a friend to pick him up from the police station.[101] They further reasoned that the circumstances of this particular interview, including its casual manner, would not cause a reasonable person to believe he was not free to leave.[102] Thus, they held that the interrogation was "non-custodial," Miranda warnings were, therefore, unnecessary and affirmed the decision of the trial court.[103]

As the Supreme Court has recently restated, when a state court had adjudicated a habeas claim on the merits, a federal court may not grant the writ unless the state court decision was an unreasonable application of clearly established federal law or contrary to that law.[104] That standard of unreasonable application is, as the Court re-emphasized, "'difficult to meet.'"[105] An unreasonable application must be "'objectively unreasonable,'" and "not merely wrong; even 'clear error' will not suffice."[106] Rather, "'as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling

---

[101] ECF # 9, Attachment at 19.

[102] *Id.*

[103] *Id.* at 21.

[104] *White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014) (citing 28 U.S.C. § 2254(d)).

[105] *Id.* (quoting *Metrish v. Lancaster*, 569 U.S. ___, ___, 133 S. Ct. 1781, 1786 (2013)).

[106] *Id.* (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)).

on the claim being presented in federal court was so lacking justification that there was error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"[107]

The Ohio appeals court decision was not contrary to clearly established federal law. There is both a United States Supreme Court and a Sixth Circuit precedent with facts similar to the present case. In *Oregon v. Mathiason*, the U.S. Supreme Court stated that a person is not in custody if he has a reasonably brief interview and is allowed to leave at the completion of the interview.[108] Furthermore, the Sixth Circuit stated in *Biros v. Bagley*, that just because an interrogation occurs at a police station, or the interviewee is a suspect, does not mean that *Miranda* warnings are required.[109] These cases as applied to the situation in this case, show that it was not unreasonable for the appellate court to conclude that the interview was "non-custodial" in nature. It was objectively reasonable for the court to determine that Carter was not in custody as he had voluntarily agreed to go to the police station, he had use of a cell phone during the interrogation, and the nature of interview was causal and short.

## Conclusion

Since the Ohio Appeals Court reviewed the evidence under the correct established federal law, and the conclusions were reasonable the court's holding that Carter was not in

---

[107] *Id.* (quoting *Richter*, 131 S. Ct. at 7896-87).

[108] *Mathiason*, 429 U.S. at 495.

[109] *Biros v. Bagley*, 422 F.3d 379 (6th Cir. 2005).

custody and, therefore, that Miranda warnings were not required, its decision is entitled to deference under 28 U.S.C. § 2254(e). Carter's claim in Ground One should be dismissed.

Dated: June 11, 2014                              s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[110]

---

[110] *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).